United States District Court
Southern District of Texas
**ENTERED**
April 30, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FRANK B. GREENWAY, and <br> MARIE G. GREENWAY, <br><br> Plaintiffs, <br><br> VS. <br><br> MORTGAGE RESEARCH <br> CENTER, LLC, *et al.*, <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. H-18-3776 |

## MEMORANDUM AND OPINION

Frank B. Greenway and Marie G. Greenway, representing themselves, sued Mortgage Research Center, LLC; the Government National Mortgage Association; Wells Fargo Bank; Robert Wilkie, the Secretary of the United States Department of Veterans Affairs; The Money Source, Inc.; and Mortgage Electronic Registration Systems, Inc. (collectively, the "Lenders"). The Greenways challenge the nonjudicial foreclosure sale of their home, which occurred in May 2018. They seek a declaration that the Lenders lack standing to foreclose, based on claims that include wrongful foreclosure, fraudulent inducement, breach of contract, void contract, breach of fiduciary duty, and quiet title. The Lenders have moved for summary judgment, submitting documents relating to the mortgage, default, and foreclosure. The Greenways have not responded or requested more time to do so, though their response deadline has long past.

After a careful review of the motion, record evidence, and applicable law, the court grants summary judgment for the Lenders. Final judgment is separately entered. The reasons are explained in detail below.

**I.      The Background**

In September 2015, the Greenways obtained a $155,778 home mortgage loan from the Mortgage Research Center to purchase a home in Bryan, Texas. (Docket Entry No. 21 at 7). The United States Department of Veteran's Affairs guaranteed the loan. (*Id.* at 22–23). When a home purchaser obtains a home-mortgage loan, the purchaser ordinarily signs a promissory note, agreeing to repay the loan amount to the lender, and a deed of trust, giving the lender certain rights in the home, including to sell the home if the purchaser fails to make loan payments.

The Greenways' Promissory Note required them to make $732.53 payments on the first day of each month for 30 years. (*Id.* at 7). The Note stated that the Greenways would default if they did not pay "the full amount of each monthly payment" when due. (*Id.* at 8). A default meant that the Lenders could send the Greenways notice that they had to make the missed payment within 30 days, or their entire loan balance would become immediately due. (*Id.*).

The Greenways' Deed of Trust required them to make timely payments under the Note. (*Id.* at 13). If the Greenways missed payments and did not repay them, even after receiving notice and time to do so, the Deed permitted the Lenders to demand "immediate payment" of the full loan balance. (*Id.* at 18–20). The Lenders had the right to sell the Greenways' home if they failed to pay the loan balance, after providing an opportunity to reinstate the loan and giving proper notice of the sale. (*Id.*). The Deed named the Mortgage Electronic Registration Systems, known as MERS, as the beneficiary. (*Id.* at 12).

The Greenways failed to make their loan payments for July and August 2017. (*Id.* at 4). In September 2017, The Money Source, the loan servicer, sent the Greenways written notice that they were in default and owed $3,149.44, giving them 35 days to cure the default. (*Id.* at 4, 26).

The notice reminded the Greenways that failing to cure the default by the deadline could result in the full loan balance becoming due and the sale of their home. (*Id.* at 27).

The Greenways did not pay any amount to cure the default. (*Id.* at 4). In December 2017, MERS assigned the Deed to The Money Source. (*Id.* at 29). The assignment was recorded in the Official Public Records of Brazos County, Texas. (*Id.*). The Money Source then appointed substitute trustees to sell the Greenways' home. (*Id.* at 32, 34). In March 2018, the substitute trustees sent the Greenways written notice that a nonjudicial foreclosure sale was scheduled for May 1, 2018. (*Id.* at 36).

At the foreclosure sale, The Money Source purchased the Greenways' property for $162,684.39. (*Id.* 39–40). The substitute trustees issued a substitute-trustee deed to The Money Source on May 7. (*Id.*). The substitute-trustee deed was recorded in the Brazos County Official Public Records. (*Id.* at 45).

As the loan guarantor, the Department of Veterans Affairs was the successor in interest to The Money Source. (Docket Entry No. 3-2 at 15); *see* 38 C.F.R. §§ 36.4323–36.4324. In June 2018, the Department sought a judgment of possession from the Brazos County Justice of the Peace. (*Id.*). In July 2018, the Justice of the Peace entered a judgment of possession for the Department after the Greenways failed to appear. (*Id.* at 8). The Greenways appealed the judgment to the County Court of Brazos County. (*Id.* at 9). In August, the Brazos County Court entered a final judgment of possession for the Department, with "such writs and processes as may be necessary in the enforcement and collection of this judgment." (Docket Entry No. 3-5).

In August, after the final judgment of possession was issued, the Greenways sued in Brazos County District Court, seeking a temporary restraining order and a preliminary injunction against the foreclosure sale (which had already happened), transfer of ownership, and eviction. (Docket

3

Entry No. 1-1 at 12–43). They also sought a declaratory judgment that the Lenders had lacked authority to foreclose.

The Department removed, opposed the requested relief, and moved to dismiss. (Docket Entry Nos. 1, 3). The court denied the request for a temporary restraining order or preliminary injunction, finding an insufficient basis for a likelihood of success on the merits and the court granted the Department's motion to dismiss. (Docket Entry No 5 at 4–8).

The Lenders then moved for judgment on the pleadings, and the Greenways moved for leave to file a supplemental complaint and to compel the Lenders to produce certain documents. (Docket Entry Nos. 15–17). The court converted the Lenders' motion into one for summary judgment, directed the Lenders to submit certain documents with the motion for summary judgment, and denied the Greenways' motion to compel. (Docket Entry No. 19). The court gave the Lenders until March 1, 2019, to file a supplemental brief and the additional documents. (*Id.* at 3). The Greenways were to respond to the summary-judgment motion no later than March 22.

The Lenders moved for summary judgment, arguing that the undisputed record evidence shows that the Greenways defaulted; received proper notice of the default and received proper notice of the foreclosure sale; did not cure; the Greenways lacked standing to challenge MERS's assignment to The Money Source; The Money Source had standing to foreclose; the Greenways had no property interest to support their quiet-title claim; the Note and Deed were neither unconscionable nor a breach of the Note or Deed; no misrepresentations were made to the Greenways as to the loan, default, assignment, or foreclosure sale; and the Greenways were not owed fiduciary duties. (Docket Entry No. 20 at 10–20). The Lenders submitted a number of documents, including the Note; Deed; default notice; assignment; substitute-trustee appointment; foreclosure-sale notice; substitute-trustee deed; affidavit confirming notice of foreclosure sale; and

4

state-court documents. (Docket Entry Nos. 3-1–3-5; 21). The Greenways have not responded or requested more time to do so.

The Lenders' arguments and submissions are considered in detail below.

## II. The Legal Standard

"Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (quotation omitted); *see also* Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Savant v. APM Terminals*, 776 F.3d 285, 288 (5th Cir. 2014)). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of" the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating'" that "there is an issue of material fact warranting trial." *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). A fact is material if "its resolution could affect the outcome of the action." *Aly v. City of Lake Jackson*, 605 F. App'x 260, 262 (5th Cir. 2015) (citing *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)). "If the moving party fails to meet [its] initial burden, [the summary-judgment motion]

5

must be denied, regardless of the nonmovant's response." *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 317 (5th Cir. 2016) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007).

### III. Analysis

Because litigants representing themselves should generally "be offered an opportunity to amend," the Greenways' motion to supplement their complaint is granted. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009); (Docket Entry No. 16). The court considers the supplemental allegations with the Greenways' state-court filing.

The Lenders argue that the Greenways have not pointed to evidence supporting their many claims, requiring them to demonstrate "by competent summary judgment proof that there is an issue of material fact warranting trial." *Nola Spice*, 783 F.3d at 536 (quotation omitted). Because the Greenways have neither responded to the summary-judgment motion nor submitted evidence,

the court considers the Lenders' submissions and the record evidence to determine whether there is a factual dispute material to any of their claims.

### A. Wrongful Foreclosure, Standing, and Quiet Title

The Greenways assert that the Lenders wrongfully foreclosed on, and sold, their home. (Docket Entry No. 1-1 at 21–24). A wrongful-foreclosure claim requires: (1) a "defect" in the foreclosure sale; (2) a "grossly inadequate selling price"; and (3) a "causal connection" between the defect and the grossly inadequate selling price. *Morris v. Deutsche Bank Nat'l Tr. Co.*, 528 S.W.3d 187, 197 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The Greenways' home sold for $162,684.39. The Greenways neither alleged that this price was grossly inadequate nor pointed to evidence supporting a reasonable inference that the price was grossly inadequate. Their wrongful-foreclosure claim fails.

The Greenways assert that because MERS lacked authority to assign the Deed, The Money Source lacked standing to sell their home in foreclosure. (Docket Entry No. 1-1 at 21–24). "Texas courts routinely allow a homeowner to challenge the chain of assignments by which a party claims the right to foreclose." *EverBank, N.A. v. Seedergy Ventures, Inc.*, 499 S.W.3d 534, 542 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (quotation omitted). But to challenge an individual assignment, the homeowner must assert a defect that would render the assignment void, not merely voidable. *Id.* "Under Texas law, however, any lack of authority would make the assignment voidable." *Antony v. United Midwest Sav. Bank*, No. H-15-1062, 2016 WL 914975, at *3 (S.D. Tex. Mar. 10, 2016). If the assignment was voidable, the Greenways lack standing to challenge it.

Even assuming that the Greenways have standing to challenge the assignment, the undisputed record evidence shows that MERS had authority to make it, as a matter of law. A

mortgagee includes the "beneficiary" and "a book entry system." TEX. PROP. CODE § 51.0001(4). MERS "is a book-entry system" and the Deed beneficiary. *Martins v. BAC Home Loans Serv., L.P.*, 722 F.3d 249, 255 (5th Cir. 2013). Because MERS is a mortgagee under Texas law, it had authority "to grant the mortgage servicer the authority to foreclose" or to "bring the foreclosure action itself." *Id.* MERS could also assign its interest in the Deed. *See Burton v. Nationstar Mortg., L.L.C.*, 642 F. App'x 422, 425 (5th Cir. 2016); *Blair v. Deutsche Bank Nat'l Tr. Co.*, 609 F. App'x 767, 769 (5th Cir. 2015); *Warren v. Bank of Am., N.A.*, 566 F. App'x 379, 383 (5th Cir. 2014). "The Fifth Circuit has 'expressly recognized that MERS may assign a deed of trust to a third party and that such assignments confer the new assignee standing to non-judicially foreclose on property associated with that particular deed of trust." *Antony*, 2016 WL 914975, at *2 (quoting *Reece v. U.S. Bank Nat'l Ass'n*, 762 F.3d 422, 425 (5th Cir. 2015) (per curiam)).

The record shows that MERS assigned its interest in the Deed to The Money Source, the loan servicer. Through the assignment, which was properly recorded in Brazos County, The Money Source acquired "rights and interests" in the Deed, "including the right to foreclose and sell." *Bierwirth v. BAC Home Loans Serv., L.P.*, No. 3-11-644, 2012 WL 3793190, at *5 (Tex. App.—Austin Aug. 30, 2012, no pet.) (quotation omitted). The Money Source had the authority to foreclose on and sell the Greenways' home, without having to possess the Note to do so. *Martins*, 722 F.3d at 255 ("The party to foreclose need not possess the note itself."). There are no factual disputes material to MERS's assignment and The Money Source's authority to foreclose. The undisputed record evidence shows that, as a matter of law, MERS's assignment to The Money Source was not void and The Money Source had standing to foreclose.

The Greenways assert a quiet-title claim, alleging that the Lenders do not have a valid interest in the home. (Docket Entry No. 1-1 at 30–31). "Under Texas law, to prevail in a suit to

quiet title, the plaintiff must prove: (1) his right, title, or ownership in real property; (2) that the defendant has asserted a 'cloud' on his property, meaning an outstanding claim or encumbrance valid on its face that, if it were valid, would affect or impair the property owner's title; and (3) that the defendant's claim or encumbrance is invalid." *Warren*, 566 F. App'x at 382. "The plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief, and must prove, as a matter of law, right, title, or ownership in himself with sufficient certainty to enable the court to see that he has a right of ownership and that the alleged adverse claim is a cloud on the title that equity will remove." *Henry v. Chase Home Fin., LLC*, No. H-11-668, 2011 WL 6057505, at *4 (S.D. Tex. Dec. 6, 2011) (alteration and quotation omitted). "Texas courts have made clear that a necessary prerequisite to the recovery of title is tender of whatever amount is owed on the note." *Antony*, 2016 WL 914975, at *5 (alteration and quotation omitted).

The Greenways have not pointed to evidence supporting a plausible inference that the Lenders' claim on their property is invalid. Undisputed record evidence shows that the Greenways signed and agreed to the Note and Deed, giving the Lenders the right to sell the home if they defaulted; the Greenways did default; the Greenways were sent proper notices of the default and of the foreclosure sale; the Greenways did not cure the default or seek reinstatement; the Greenways' home was sold; and a substitute-trustee deed was issued and recorded.[1] The foreclosure sale "was valid and extinguished" the Greenways' interest in their home. *Singha v. BAC Home Loans Serv., L.P.*, 564 F. App'x 65, 72 (5th Cir. 2014).

---

[1] The Greenways appear to allege that their Note and Deed were assigned to the "GNMA REMIC 2015-141 Trust after the Closing Date October 30, 2015," making the assignment voidable, and that all subsequent assignments were defective. (Docket Entry No. 1-1 at 19). The Lenders deny that the Greenways' loan was assigned to a mortgage-backed security trust and point out that the Greenways have not submitted any evidence supporting their allegation. (Docket Entry No. 20 at 11). The Greenways have not submitted evidence supporting a plausible inference of an assignment to a mortgage-backed security trust. And even if they had, it is unclear how this would affect the Lenders' title to their property.

The Greenways do not dispute that they were in default, and they have not submitted or identified evidence supporting an inference or creating a factual dispute that they paid the amount owed under the Note. Any "arguments that merely question the validity of an assignment of a deed of trust from MERS to another mortgage servicer are not a sufficient basis for a quiet title action under Texas law." *Warren*, 566 F. App'x at 383. Based on the current record, the court finds no factual disputes material determining that whether the Lenders have a valid and superior title.

### B.     Contract Breach and Unconscionability

The Greenways assert that the Lenders breached the Deed. "In Texas, the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (alteration and quotation omitted). The Greenways do not dispute that they defaulted and then failed to make payments to bring the loan current. The undisputed record evidence shows that they have not performed or tendered performance of their contract obligations.

But even assuming that they had performed, the Greenways have not submitted or identified evidence to support a reasonable inference of breach. The Greenways have alleged that the Lenders breached the following Deed provision:

> Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law.

(Docket Entry No. 21 at 19). The Greenways allege that the Lenders breached this provision by selling and assigning the Deed to a mortgage-backed securities trust without releasing the Deed.

The Lenders deny that the Greenways' Deed was assigned to a mortgage-backed securities trust, and the Greenways have not submitted or identified evidence supporting a reasonable inference that it was. Nor have the Greenways submitted or identified evidence suggesting that they paid the Lenders "all sums secured" by the Deed, as courts have found nearly identical provisions to require. *See Rice v. JPMorgan Chase Bank, Nat'l Ass'n*, No. H-15-416, 2015 WL 4112287, at *3 (S.D. Tex. July 7, 2015) ("The 'sums secured by the Security Instrument' would therefore appear to be all payments due from Plaintiffs under the Note, not the consideration received in a sale or other transfer of the Note itself." (alteration omitted)); *Conrad v. SIM Mortg. Corp.*, No. 14-CV-915, 2015 WL 1026159, at *6 (N.D. Tex. Mar. 6, 2015) ("The 'payment of all sums' language is clearly intended to refer to the borrower's obligation to pay all outstanding sums due under the terms of the note."). The Greenways' contract-breach claim fails.

The Greenways next assert that the Note and Deed are unconscionable. "Texas recognizes both substantive and procedural unconscionability." *Mattar v. BBVA Compass Bank, NA*, No. 13-16-496-CV, 2018 WL 2440382, at *5 (Tex. App.—Corpus Christi-Edinburg 2018, no pet.). "Substantive unconscionability refers to the fairness of the agreement itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the agreement." *Id.* Unconscionability "defies precise legal definitions because it is not a concept, but a determination to be made in light of a variety of factors not unifiable into a formula." *Id.* (quotation omitted). "Depending on context, factors that may be considered include the commercial atmosphere in which the agreement was made, the alternatives available to the parties, the parties' ability to bargain, any illegality or public-policy concerns, and the agreement's oppressive or shocking nature." *Id.*

The Greenways' allegation seems to be that the Lenders did not tell them that the Note and Deed could be sold and transferred without their knowledge or approval. (Docket Entry No. 1-1 at 27–28; Docket Entry No. 16 at 2–3). The Deed states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.

(Docket Entry No. 21 at 18). This provision makes clear that the Lenders could sell the Note and Deed without notice to, or approval by, the Greenways. The Greenways do not dispute that they signed and agreed to the Deed. "A party who signs a contract is presumed to know its contents," as long as the party had "an opportunity to read the contract." *Kehoe v. Pollack*, 526 S.W.3d 781, 793–94 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The Greenways have not identified or submitted evidence supporting a reasonable inference that they lacked an opportunity to read the Note or Deed or that there was unfairness surrounding their agreement. The court has no basis to find that the Note or Deed were procedurally unconscionable.

A sale or assignment of the Note or Deed would also have no effect on the Greenways' obligations or rights. The only change would be in the loan servicer. The Greenways have not explained how a provision authorizing a sale or assignment without notice creates "inherent unfairness" to them. *Hogg v. Lynch, Chappell & Alsup, P.C.*, 553 S.W.3d 55, 73 (Tex. App.—El Paso 2018, no pet.). Based on the current record, the court has no basis to find that the Note or Deed were substantively unconscionable.

### D. Fiduciary-Duty Breach

To succeed on a claim of fiduciary-duty breach, the Greenways must prove that they had a fiduciary relationship with the Lenders. "In certain formal relationships, such as an attorney-client

or trustee relationships, a fiduciary duty arises as a matter of law." *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005). An informal fiduciary relationship "may arise where one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or purely personal one." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quoting *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied)). "To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998).

"Texas courts have specifically held that there is no fiduciary relationship between a borrower and a lender." *Bell v. Wells Fargo Bank, N.A.*, No. 14-CV-388, 2017 WL 6761770, at *7 (N.D. Tex. Oct. 13, 2017); *1001 McKinney Ltd. v. Credit Suisse First Bos. Mort. Capital*, 192 S.W.3d 20, 36 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("Generally, the relationship between a borrower and a lender is an arm's length business relationship in which both parties are looking out for their own interests."). "There is a seldom-used exception to this rule: when a special relationship between a borrower and a lender has been found, it has rested on extraneous facts and conduct, such as excessive lender control over, or influence in, the borrower's business activities." *Mattar*, 2018 WL 2440382, at *7.

The Greenways have not submitted or identified evidence supporting a reasonable inference that there was a special relationship of trust and confidence that existed "prior to, and apart from," the Note and Deed. *CAT Contracting*, 964 S.W.2d at 288. Nor have the Greenways submitted or identified evidence supporting an inference of "extraneous facts and conduct" that would weigh in favor of finding a fiduciary relationship. *Mattar*, 2018 WL 2440382, at *7. Based on the current record, the court has no basis to find that a relationship of special trust existed

13

between the Greenways and the Lenders. The Greenways cannot prevail on their breach of fiduciary duty claim.

## C. Fraudulent Inducement

The Greenways also asserted a fraudulent-inducement claim.[2] (Docket Entry No. 1-1 at 24–26). "Fraud claims that depend on the existence of an enforceable contract are properly styled as fraudulent inducement claims, not common law fraud claims." *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012). "[W]ith a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." *Id.* (quoting *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001)). A fraudulent-inducement claim requires showing that: (1) the Lenders made a misrepresentation; (2) the Lenders knew the representation was false and intended to induce the Greenways to enter into the loan through that misrepresentation; (3) the Greenways actually relied on the misrepresentation in entering into the loan; and (4) the Greenways' reliance led them to suffer an injury by entering into the loan. *Id.* The Greenways must also show that they would not have agreed to the loan "in the absence of the misrepresentation." *Id.*

The Greenways alleged that the Lenders mispresented that: they had authority to foreclose on and sell the home; they held and owned the Note and Deed; and the Mortgage Research Center was "going to be" the lender. (Docket Entry No. 16 at 2; Docket Entry No. 21 at 26–27). The record evidence does not support any of these allegations. The Note and Deed gave the Lenders the right to foreclose and sell the Greenways' home if they defaulted. The Greenways do not dispute that they defaulted. MERS assigned its interest in the Deed, including the right to

---

[2] The Greenways also assert a claim for fraudulent concealment. (Docket Entry No. 1-1 at 24–26). Fraudulent concealment "estops a defendant to rely on the statute of limitations as an affirmative defense when the defendant owes a duty to disclose but fraudulently conceals the existence of a cause of action." *B. Mahler Interests, L.P. v. DMAC Constr., Inc.*, 503 S.W.3d 43, 54 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see also Doe v. Baylor Univ.*, 313 F. Supp. 3d 786, 792 (W.D. Tex. 2018). Because the Lenders do not assert a statute of limitations defense, this doctrine does not apply.

foreclose, to The Money Source. Because the Greenways have not submitted or identified evidence supporting an inference that the Lenders lacked authority to foreclose or that they lacked a valid interest in the Note and Deed, the court has no basis to find that any representations the Lenders made about the authority or interest were false.

Nor have the Greenways submitted or identified evidence supporting an inference that the Lenders represented that the Mortgage Research Center would remain the owner and holder of the Note and Deed. The Note defined the "Note Holder" to include "anyone who takes this Note by transfer." (Docket Entry No. 21 at 7). The Deed stated that the Note and the Deed "can be sold one or more times without prior notice to" the Greenways. (*Id.* at 18). These provisions allow Mortgage Research Center to sell or assign its interest in the Note and Deed, without consulting with, informing, or obtaining consent from the Greenways. The Greenways have not pointed to evidence showing that the Lenders represented that they would not exercise this right. Based on the current record, the court has no basis to find that the Lenders misrepresented that the Mortgage Research Center would remain the holder and owner of the Note and Deed.

The Greenways have also alleged that the Lenders failed to disclose that Mortgage Research Center was "not a Federal Reserve Depository Bank"; there was "a third-party Sponsor Bank warehouse lender"; what "the terms of the Securitization Agreements" were; or that the Note and Deed would be sold or assigned. (Docket Entry No. 1-1 at 24–26; Docket Entry No. 16 at 3). These allegations align more closely with a fraudulent-nondisclosure claim, which the Greenways have not asserted. Even assuming that the Greenways had asserted this claim, they could not prevail on it.

To establish fraud by nondisclosure, the Greenways must prove that:

(1) the defendant failed to disclose facts to the plaintiff, (2) the defendant had a duty to disclose those facts, (3) the facts were material, (4) the defendant knew the

15

plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts, (5) the defendant was deliberately silent when it had a duty to speak, (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, (7) the plaintiff relied on the defendant's nondisclosure, and (8) the plaintiff was injured as a result of acting without that knowledge.

*Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 849–50 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

"A defendant's failure to disclose information does not constitute fraud 'unless there is a duty to disclose the information.'" *Jay v. Wells Fargo for Option One Mortg. Loan Tr. 2006-2, Asset-Backed Certificates, Series 2006-2*, No. 17-CV-349, 2018 WL 2944432, at *3 (W.D. Tex. June 12, 2018) (quoting *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001)). "[F]or a duty to disclose to arise, the parties must be in a confidential or fiduciary relationship." *Id.* "Lenders generally do not owe borrowers a fiduciary duty." *Id.* As discussed earlier, the Greenways have not submitted or identified evidence supporting a reasonable inference that they had any special relationship of trust with the Lenders. They have not submitted or identified evidence supporting finding that they were in a "confidential" relationship with the Lenders. *Id.* There is no factual dispute material to this issue. Because the Greenways have not established that the Lenders had a duty to disclose information, the Greenways cannot prevail on a fraudulent-nondisclosure claim.

### F.     The Remaining Claims

In the supplemental complaint, the Greenways asserted that the Lenders violated the Truth in Lending Act and the Deceptive Trade Practices Act. (Docket Entry No. 16 at 4). The Greenways have not identified which provisions of those Acts the Lenders allegedly violated. And they have not submitted or identified any evidence to support claims under those Acts. The court does not have a basis to find that the Lenders violated the Truth in Lending Act or the Deceptive Trade Practices Act.

The Greenways cite to a Clayton Act provision that permits suspension of limitations periods where "any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws." 15 U.S.C. § 16(i). There are no allegations that the United States has instituted a civil or criminal proceeding to enforce the antitrust laws in this case, and the Lenders have not asserted a limitations defense.

The Greenways also alleged violations of various criminal statutes.[3] (Docket Entry No. 16 at 4). There is no private cause of action under these statutes. *See Wilder v. Ogden Ragland Mortg.*, No. 15-CV-4013, 2017 WL 1053922, at *3 (N.D. Tex. Feb. 16, 2017) (section 1611 "does not provide for a private cause of action"); *Thompson v. Wells Fargo Bank, N.A.*, No. H-15-598, 2016 WL 164114, at *3 (S.D. Tex. Jan 14, 2016) (section 1001 does "not provide a private cause of action"); *Powell v. Galveston Indep. Sch. Dist.*, No. G-6-415, 2006 WL 2239097, at *4 (S.D. Tex. Aug. 1, 2006) (section 4 does not "provide for a private right of action").

Last, the Greenways seek a declaratory judgment that they have the only valid interest in their property. (Docket Entry No. 1-1 at 31–32). "A request for declaratory relief cannot stand alone under either Texas law or federal law." *Taylor v. Dietech Fin., LLC*, No. H-16-2465, 2017 WL 2362493, at *5 (S.D. Tex. May 31, 2017) (citing *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996)). The Greenways' request must be denied because the substantive claims have been dismissed. Their request for a temporary restraining order and a preliminary injunction against the Lenders is also denied. (Docket Entry No. 1-1- at 31).

---

[3] The Greenways cite to 18 U.S.C. §§ 4 and 1001(a)(2) and 15 U.S.C. § 1611.

## IV. Conclusion

The Greeways' motion to supplement the complaint is granted. (Docket Entry No. 16). Summary judgment is granted for the Lenders. (Docket Entry No. 20). The Greenways' request for a temporary restraining order or a preliminary injunction is denied. (Docket Entry No. 1-1- at 31). Final judgment is separately entered.

SIGNED on April 30, 2019, at Houston, Texas.

                                                    Lee H. Rosenthal
                                          Chief United States District Judge